**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED SPINAL ASSOCIATION, a not for profit corporation, THADDEUS JESSIE, ERIC BROWN, JEREMIAH BOYER, NIKKI BOGGESS, GRACE MORRELL, JUAN GARCIA, MILITA DOLAN, individually on behalf of themselves and all other persons similarly situated, | ) ) ) ) ) ) ) ) | Case No. 15-cv-5570 |
| Plaintiffs, | ) ) | |
| HEARTLAND DENTAL, LLC, a Delaware limited liability company. | ) ) ) | PLAINTIFFS DEMAND TRIAL BY JURY |
| Defendant. | ) ) ) | |

**COMPLAINT**

Plaintiffs United Spinal Association ("USA"), for its members, and Thaddeus Jessie, Eric Brown, Jeremiah Boyer, Nikki Boggess, Grace Morrell, Juan Garcia and Milita Dolan, individually on behalf of themselves and all other persons similarly situated, by their attorneys Jennifer M. Sender, Andrés J. Gallegos, and Tracy E. Stevenson of Robbins Salomon & Patt, Ltd., and attorneys with Leon Cosgrove, LLC, complain of Defendant Heartland Dental, LLC ("Heartland"), as follows:

**INTRODUCTION**

1.      Poor oral health is also associated with a number of diseases, including diabetes, stroke and respiratory disease. The burden of oral disease is unequally distributed, with minorities and low-income people significantly more likely to report oral health problems. In

112764202                                   1

older adults, poor oral health is significantly associated with disability and reduction in mobility.[1]

2.      The oral health problems of individuals with disabilities are complex. These problems may be due to underlying congenital anomalies as well as to an inability to receive the personal and professional health care needed to maintain oral health. Regularly scheduled dental examinations are critical to maintaining healthy teeth, gums, and overall health. Many diseases have early manifestations in the oral tissues. Diabetes, heart disease, blood disorders, infectious diseases, and gastric-intestinal disorders all show early signs in the mouth. Likewise, dental and oral diseases can have a profound effect on general health. Dentists are qualified to administer such exams and treat many diseases and disorders of the mouth and gums. A dental exam is low cost and of high benefit to the patient, but only if a person can access dental services.

3.      Inadequate dental care can cause a build-up of bacteria in the mouth and cause chronically inflamed gums, both of which can weaken the immune system and put a person at risk for other health problems, such as cardiac disease or poor healing. When one's body is already compromised by physical disability, those difficulties can be even more severe. For a person with spinal cord injury, for example, an immune system taxed by an abscessed tooth or gum disease can weaken the body's ability to fight off urinary tract infections or heal pressure sores. Also, many medications that control pain or spasticity cause dry mouth - a side effect that can have a detrimental effect on the health of the teeth. People who forego routine dental care generally suffer from acute infections and then struggle to find care on an emergency basis when it is much more difficult and costly.

---

[1] See The Network for Public Health, *Policy Options to Increase Access to Oral Health Care and Improve Oral Health by Expanding the Oral Health Workforce,* posted October 10, 2014. Available at: https://www.networkforphl.org/resources_collection/2014/10/10/507/brief_policy_options_to_increase_access_to_oral_health_care_and_improve_oral_health_by_expanding_the_oral_health_workforce

4.     The standard dental treatment room is too small for a wheelchair, and patients usually have to transfer into the exam chair. If they cannot transfer by themselves, they will need assistance; yet most dental professionals and staff have not had training in safe patient lifting or transfer techniques or do not have lift equipment available to facilitate patient transfers, such is the case here.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188. Plaintiffs' claims arise under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et sequitur,* Public Law 101-336, 104 Stat. 327, as amended.

6.     Venue is proper in this district because Defendant, a resident of this district, caused and continues to cause injuries to Plaintiffs in this district.

## THE PARTIES

### Associational Plaintiff

7.     Plaintiff USA is a not-for-profit membership organization of more than 43,000 individuals with spinal cord dysfunction, injury or disease, and other diseases, injuries or conditions affecting mobility such as multiple sclerosis, poliomyelitis or Lou Gehrig's disease. The vast majority of USA's members are persons with disabilities as defined by the ADA and utilize mobility devices.

8.     USA has 41 organizational chapters (each a "Chapter") in 29 states.[2] Collectively, the 41 Chapters elect one director to serve on the USA Board of Directors and on the Executive Committee of the USA Board of Directors. USA's Board of Directors elects the officers of USA.

---

[2] USA Chapters are located in Arkansas, California, Connecticut, District of Columbia, Florida, Georgia, Illinois, Iowa, Kentucky, Louisiana, Massachusetts, Michigan, Minnesota, Missouri, Nevada, New Hampshire, New Mexico, New York, North Carolina, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Utah, Washington and Wisconsin.

9.     USA furthers its members' interests by, *inter alia,* assuring quality healthcare, promoting research, advocating for civil rights and independence, and educating the public about these issues and enlisting their help to achieve these fundamental goals. USA and its predecessor organization have been advocates for people with spinal cord impairments since 1946.

10.    Part of USA's mission is to eradicate discrimination in the delivery of health and dental care, and it promotes policies that establish consumer-directed quality healthcare and community integration, which includes educating its members about their rights to accessible healthcare, and working with, and educating, industry groups on accessible healthcare compliance. USA further provides counseling services to persons affected by discriminatory practices at medical and dental facilities.

11.    USA's members live across the country including in those states where Defendant's affiliated clinics are located.

**Individual Plaintiffs**

12.    Plaintiff Thaddeus Jessie sustained a spinal cord injury resulting in paraplegia, depends upon the use of a wheelchair, and is a person with a disability within the meaning of all applicable statutes. Thaddeus Jessie is a member of USA. Thaddeus Jessie resides in Carrollton, Texas.

13.    Plaintiff Jeremiah Boyer lives with the effects of Cerebral Palsy resulting in paraplegia, depends upon the use of a wheelchair, and is a person with a disability within the meaning of all applicable statutes. Jeremiah Boyer resides in Rockford, Illinois.

14.    Plaintiff Eric Brown lives with the effects of Cerebral Palsy that at times requires his use of a manual wheelchair, and is a person with a disability within the meaning of all applicable statutes. Eric Brown resides in Roscoe, Illinois.

15.    Plaintiff Nikki Boggess lives with the effects of Cerebral Palsy resulting in quadriplegia, depends upon the use of a power wheelchair, and is a person with a disability within the meaning of all applicable statutes. Nikki Boggess resides in Urbana, Illinois.

16.    Plaintiff Grace Morrell has been living with the effects of polio resulting in paraplegia, depends upon the use of a manual wheelchair, and is a person with a disability within the meaning of all applicable statutes. Grace Morrell resides in Pembroke Pines, Florida.

17.    Plaintiff Juan Garcia has been living with the effects of a spinal cord injury resulting in quadriplegia, depends upon the use of a power wheelchair, and is a person with a disability within the meaning of all applicable statutes. Juan Garcia resides in Miami, Florida.

18.    Plaintiff Milita Dolan has been living with the effects of a spinal cord injury resulting in paraplegia, depends upon the use of manual wheelchair, and is a person with a disability within the meaning of all applicable statutes. Milita Dolan resides in Pembroke Pines, Florida.

19.    References herein to Plaintiffs shall be deemed to include the named Plaintiffs and each member of the putative class, unless otherwise indicated.

**Defendant**

20.    Heartland is a Delaware limited liability company, registered as a foreign limited liability company authorized to do business in the state of Illinois, in the state of Florida, and in certain other jurisdictions where it operates. Heartland has over 513 "affiliated" dental clinics located in 27 states.[3] Florida has the largest number of Heartland's affiliated clinics, with approximately 102 clinics, followed by Illinois, with approximately 68 clinics.

---

[3] Heartland's affiliated clinics are located in Alabama, Arizona, California, Florida, Georgia, Iowa, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maryland, Michigan, Missouri, Mississippi, Nebraska, New Hampshire, Nevada, New York, Ohio, Oklahoma, Pennsylvania, South Carolina, Tennessee, Texas, Virginia and Wisconsin.

21.     On information and belief, Heartland's "affiliation" relationships consist of an ownership interest in all or a portion of all of its respective affiliated clinics.

22.     Each of its affiliated dental clinics provides comprehensive dental care and treatment services to the public. Accordingly, each Heartland affiliated clinic is a public accommodation that is covered by Title III of the ADA. 42 U.S.C. § 12181(7)(F); 28 C.F.R. § 36.104.

23.     Heartland provides to all of its affiliated clinics administrative, financial, management, operational and other nonclinical support. That support includes, *inter alia*, establishing common uniform nonclinical policies, practices and procedures, providing training for nonclinical personnel on those policies, practices and procedures, assisting in the procurement or sourcing of dental equipment and furniture, and controlling the nonclinical operations. On its website, it encourage dentists to join Heartland so those dentists can return to be "dentist[s] again," and not an accountant, marketing guru or human resources manager.

## CLASS ALLEGATIONS

24.     Pursuant to Fed. R. Civ. P. 23(a), associational Plaintiff USA brings this action on behalf of its members, and the individual Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated. The class that Plaintiffs seek to represent is composed of: all persons with ambulatory impairments who depend upon the use of wheelchairs in all of the states where Defendant's affiliated clinics operate, who within the two years (or one year for persons in Kentucky, Louisiana and Tennessee) prior to the date of the filing of this complaint  have been unable to obtain dental services and care, or have been required to remain in their wheelchairs as they obtained dental services and care, at Heartland's affiliated dental clinics because of Heartland's failure to comply with the Americans with Disabilities Act

("ADA"), 42 U.S.C. § 12101, *et seq*., and/or the applicable ADA Accessible Guidelines as adopted by the U.S. Department of Justice.

25.     The persons in the class are so numerous that joinder of all persons is impracticable and the disposition of their claims in a class action is a benefit to the parties and the Court. As of 2014, there are an estimated 3.3 million people in the United States who use wheelchairs.[4] In the 27 states where Defendant's affiliated dental clinics operate, there are an estimated 1.8 million people reporting an ambulatory impairment.[5] Plaintiffs are informed and believe that thousands of persons with ambulatory impairments who depend upon the use of wheelchairs seeking dental care services from Heartland's affiliated clinics have suffered and will continue to suffer systemic discrimination.

26.     Associational Plaintiff USA and the individual Plaintiffs seek to maintain this action as a class pursuant Rule 23(b)(2) of the Federal Rule of Civil Procedure with respect to the following issues ("Class Issues"):

a.     Whether Defendant's affiliated clinics are readily accessible to and usable by persons with ambulatory impairments who depend upon the use of wheelchairs.

b.     Whether Defendant's failure to provide lift or transfer equipment to facilitate the transfer of persons with ambulatory impairments who depend upon use wheelchairs onto examination chairs for treatment and services denies those individuals the full and equal enjoyment of the Defendant's services and facilities at its affiliated clinics.

---

[4] See Disabled World, *Disability in America Infographic*. First published, December 1, 2011, revised August 25, 2014. Available at: http://www.disabled-world.com/disability/statistics/american-disability.php.

[5] *See* Erickson, W., Lee, C., von Schrader, S. (2014). Disability Statistics from the 2012 American Community Survey (ACS). Ithaca, NY: Cornell University Employment and Disability Institute (EDI). Retrieved May 22, 2015 from www.disabilitystatistics.org. (There are an estimated 2.7 million people in the United States who utilize wheelchairs. In the 27 states where Heartland's dental clinics are located, there are approximately 1.8 million people reporting an ambulatory impairment).

c.     Whether the inability to readily move the examination chairs at Defendant's affiliated clinics to provide access to the dental examination equipment by persons with ambulatory impairments who rely upon the use of wheelchairs who elect to remain in their wheelchairs for treatment and services denies those individuals the full and equal enjoyment of the Defendant's services and facilities at its affiliated clinics.

d.     Whether Defendant's uniform policy, practice and procedure of not providing lift or transfer equipment, and not training its staff on safe patient lifting techniques or procedures denies persons with ambulatory impairments who rely upon the use of wheelchairs the full and equal enjoyment of the Defendant's services and facilities at its affiliated clinics.

27.     As set forth above, there are common questions of law and fact relating to specific Class Issues that are common to the class, that affect the Class in the same manner, namely that the Class is being denied and will be denied their civil rights and the full and equal enjoyment of the dental services and care from Heartland's affiliated clinics, due to the barriers described herein.

28.     The claims of Plaintiffs are typical of the claims of the class because Plaintiffs are similarly affected by the failure of Heartland's affiliated clinics to provide the legally required access to its facilities and dental services throughout the jurisdictions where they operate.

29.     Plaintiffs are adequate class representatives because they are directly impacted by the failure of Heartland's affiliated clinics to provide access to dental care services, facilities and equipment in its dental care offices. The interests of Plaintiffs are not antagonistic to or otherwise in conflict with the interests of the class as a whole. The attorneys representing the class are experienced in representing clients in class actions and class action civil rights claims.

30.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Heartland has acted and/or failed to act on grounds applicable to the class as a whole, making final

declaratory and injunctive relief for the class as a whole superior to all other methods of disposition.

31.     The interests of members of the class in individually controlling the prosecution of a separate action is low, in that most class members would be unable to individually prosecute an action because the amounts at stake for individuals, while significant, are relatively small for most or all of the class members contrasted with the costs of prosecution. Concentrating litigation in a single forum will promote judicial efficiency by resolving common questions of law and fact in a single forum instead of across multiple courts.

32.     A class action would be manageable. Individualized litigation in 27 separate jurisdictions presents a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties, allows the hearing of claims that might otherwise go unaddressed because of the relative expense of bringing individual lawsuits, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

33.     Plaintiffs seek injunctive relief requiring Heartland to comply in all material respects with the ADA and the ADA Accessible Guidelines as adopted by the U.S. Department of Justice, specifically: (i) to cause its affiliated clinics to remove all architectural barriers; (ii) acquire, where needed, accessible dental equipment and furniture, and lift and transfer equipment; (iii) adopt and/or modify its policies, practices and procedures, and provide training on the implementation thereof, to provide accessible facilities and services to Plaintiffs; and (iv) adopt and implement disability cultural competency training for its clinic employees and agents.

## **FACTUAL ALLEGATIONS**

34.     Defendant's affiliated clinics have a pattern and practice of failing to provide full and equal access to dental exams for persons with ambulatory impairments who depend upon the

use of wheelchairs who are seeking dental care services by failing to remove architectural barriers that prevent full and equal enjoyment of, and access to its affiliated dental clinics' facilities and dental examination services, and by the Defendant failing to make reasonable modifications to its policies, practices and procedures to ensure that persons with ambulatory impairments who depend upon the use of wheelchairs are provided with equal access to the facilities, equipment and services Heartland's affiliated clinics provide to their non-disabled patients.

35.     As a consequence of the aforesaid conduct, Heartland's affiliated clinics do not provide full and equal access for persons with ambulatory impairments who depend upon the use of wheelchairs. Employees and staff members at the Heartland affiliated clinics are not able to overcome these barriers and provide dental services on an equal basis to persons with ambulatory impairments who depend on the use of wheelchairs, and thus persons with ambulatory impairments who depend upon the use of wheelchairs are unable to secure comprehensive dental care services at Heartland's affiliated clinic locations that are readily available to non-disabled persons without ambulatory impairments.

36.     Heartland's affiliated clinics do not provide, and they deny and continue to deny, access for persons with ambulatory impairments who depend upon the use of wheelchairs by creating and failing to remove architectural barriers in the following ways:

a.      Certain of the affiliated clinic locations have steps or stairs and do not provide accessible entrances to its clinics for persons with ambulatory impairments who rely upon use wheelchairs;

b.      Examination chairs do not lower sufficiently to facilitate the transfer of ambulatory impaired persons from their wheelchairs onto the dental exam chairs;

c.      The affiliated clinic locations have no safe means to lift or transfer ambulatory impaired persons from their wheelchairs onto examination chairs, such as transfer boards, portable lift systems, or fixed overhead lift systems;

      d.      The examination chairs are either fixed to the floor or cannot be readily moved to permit ambulatory impaired persons in wheelchairs to access the dental examination equipment while seated in their wheelchairs, in those circumstances that the person's wheelchair reclines and the examination can be reasonably performed while the person remains in his/her wheelchair;

      e.      The examination equipment cannot be moved sufficiently to accommodate a dental examination for a person in a wheelchair while such person remains in his or her wheelchair in those circumstances that the person's wheelchair reclines and the examination can be reasonably performed while the person remains in his/her wheelchair;

      f.      Persons with ambulatory impairments who depend upon the use of wheelchairs are turned away from Heartland's affiliated clinics or dissuaded from seeking dental care services from Heartland's affiliated clinics when they inquire telephonically about the availability of dental care services for disabled persons who depend on the use of wheelchairs; and

      g.      Defendant otherwise has denied access to disabled ambulatory impaired individuals who depend upon the use of wheelchairs.

37.     The pervasive barriers to access described above make it impossible or more difficult and/or more expensive for persons with ambulatory impairments who depend upon the use of wheelchairs to receive adequate dental care and services. The failure of Defendant to remove such architectural access barriers throughout Heartland's affiliated clinics and its failure to modify its policies, practices and procedures applicable to all of its affiliated clinics, prevents full and equal access, subjects persons with ambulatory impairments who depend upon the use of wheelchairs to embarrassing, humiliating, painful and frustrating experiences, and increases the likelihood that they will not be able to secure dental care services that are available to people without ambulatory impairments. Unless enjoined, Heartland's disregard of the civil rights of persons with ambulatory impairments who depend upon the use of wheelchairs will continue to injure the individual Plaintiffs, the members of Plaintiff USA, and the Class.

## EXPERIENCES OF THE NAMED PLAINTIFFS

### *Thaddeus Jessie*

38.     Plaintiff Thaddeus Jessie is a person with an ambulatory impairment who depends upon the use of a wheelchair. Since 2008, Thaddeus has been living with the effects of a spinal cord injury, at the T-6 level, resulting in paraplegia. As a result, he utilizes a power wheelchair, which does not have a tilt or recline function. Thaddeus is able to independently transfer in and out of his wheelchair to a surface that is of equal or lower height to his wheelchair by using a transfer board or with the assistance of people who are trained to safely transfer him. For his safety, Thaddeus does not permit people to lift him if they have not been trained to safely lift persons with spinal cord injuries. Moreover, given his height of 6'0" and weight of 240 pounds, it requires more than one person to safely lift him.

39.     Thaddeus has not had a dental examination since he sustained a spinal cord injury. One of the reasons why Thaddeus has not had a dental examination since sustaining a spinal cord injury is the fact that he is not able to locate a dental clinic close to him that is accessible. Thaddeus will not undergo a dental examination if required to remain in his wheelchair as it will be incredibly uncomfortable and painful for some procedures. Additionally, if Thaddeus is required to remain in his wheelchair for a dental treatment or examination, it could pose a safety risk to the dental technician and dentist.

40.     On April 10, 2014, Thaddeus called a Heartland affiliated clinic, The Carrollton Dentist Office, located at 2440 N. Josey Lane in Carrollton, Texas, which is approximately 4 miles from his apartment. Thaddeus spoke with a clinic employee and informed her of his paraplegia, explained his use of a powered wheelchair and then inquired about the accessibility of the clinic. The employee informed Thaddeus that he may have difficulties maneuvering his wheelchair within the examination rooms as she wasn't sure whether there was sufficient

maneuvering space. When Thaddeus requested that the examination be done while he is on the examination chair instead of in his wheelchair, the employee quickly informed Thaddeus that there was no transfer or sliding board available, and there was no fixed or portable lift equipment available, but that the clinic did have people to assist him with transferring. However, the employee never inquired as to Thaddeus' height and weight, and just assumed that the clinic's staff would be able to transfer him. The employee further informed Thaddeus that if he had to stay in his wheelchair for an examination that the examination chair could not be moved as it was fixed to the floor.

41.     Based on concerns for his own safety if he went to the aforementioned clinic, Thaddeus called another local Heartland affiliated clinic, Plano Smile Design, which is located at 7965 Custer Road, Suite 100, in Plano, Texas, approximately 14 miles from his apartment. On April 10, 2014, Thaddeus spoke with one of the clinic's employees and explained that he was a person with a disability, specifically, a paraplegic, who uses a powered wheelchair, and inquired as to the accessibility of the clinic. The employee explained to Thaddeus that there were no staff members trained to safely transfer him, there was no transfer or sliding board available for his use, and the clinic did not have portable or fixed lift equipment available. Moreover, the employee informed Thaddeus the examination chair was fixed to the floor and could not be moved in case he had to stay in his wheelchair for an examination.

42.     Thaddeus then called another Heartland Affiliated clinic, The Addison Dentist, which is located at 4145 Beltline Rd., Addison, Texas, approximately 4 miles from Thaddeus's apartment. On April 10, 2014, Thaddeus spoke with a clinic employee and explained to her that he was a person with a disability who uses a powered wheelchair.  The employee informed him that she did not know if there was sufficient room inside the examination room for him to turn around in his wheelchair. She also explained that the examination chair is fixed to the floor, is

immovable and is not height adjustable. In addition, the employee informed Thaddeus that there was no transfer or slide board available at the clinic, no staff member has been trained to safely transfer someone from a wheelchair onto an examination chair and that the clinic did not have portable or fixed transfer equipment.

43. On June 18, 2015, Thaddeus followed up with The Carrollton Dentist Office, Plano Smile Design, and The Addison Dentist by calling each of them to see if he could be treated at those clinics and receive assistance transferring from his wheelchair onto their examination chairs. Employees at each clinic informed him they still did not have any lift equipment to assist in transferring him or staff trained in safe patient lifting techniques.

44. Thaddeus would use any of the Heartland affiliated clinics that he attempted to secure dental services when they become accessible.

*Jeremiah Boyer*

45. Plaintiff Jeremiah Boyer has been living with the effects of Cerebral Palsy since birth. As a result, Jeremiah utilizes a manual wheelchair for his mobility. Jeremiah is able to transfer independently from his wheelchair depending upon the height and type of surface to which he is transferring. If the surface is too high, then he requires the use of either lift equipment or to be lifted by persons who are properly trained.

46. On February 26, 2014, Jeremiah called a Heartland Affiliated clinic, Affordable Dentistry Today, located at 5819-21 E Riverside Blvd., in Rockford, Illinois, which is approximately 0.35 miles from his place of employment at RAMP Center for Independent Living, at 202 Market Street in Rockford, Illinois. Jeremiah called to assess the accessibility of the clinic's facilities and services, not only for him, but for those whom he advocates. Jeremiah spoke with a clinic employee who could not answer any of his questions regarding the clinic's

accessibility and suggested that he call back to speak with the clinic's manager. On March 3, 2014, Jeremiah called the clinic and spoke to the clinic manager. Jeremiah identified himself to clinic manager as a person with a disability, explained to her that he uses a manual wheelchair, and inquired as to the accessibility of the facility and its services. When Jeremiah asked if they had any trained staff members to safely lift him, or assist him in transferring, onto the examination chair, the clinic manager informed him that they did not have anybody trained to transfer him safely, and the clinic did not have any equipment to assist him in transferring, like a transfer board or portable lift equipment. The clinic manager then suggested that he should bring someone with him to assist in lifting or transferring him. The clinic manager also informed Jeremiah that the examination chair does not move. She stated that she did not believe that he would be able to receive an examination or any procedure at their clinic if he was not on the examination chair because of the positions and angles the doctor would need for an examination or any of the procedures.

47.     Jeremiah would use the Affordable Dentistry Today when it becomes accessible.

***Eric Brown***

48.     Plaintiff Eric Brown has been living with the effects of Cerebral Palsy since birth, which at times requires that he use a manual wheelchair. Eric has the ability to independently transfer onto certain surfaces depending upon the height of the surface, but if it is too high then he requires assistance to use a transfer board, or he requires persons trained in safe patient handling to lift him.

49.     On February 26, 2014, Eric called a Heartland Affiliated clinic, the Dental Group of Rockford, which is located at 3065 N. Perryville in Rockford, Illinois, which is approximately

7 miles from his place of employment at RAMP Center for Independent Living. Eric called to assess the accessibility of the clinic's facilities and services, not only for him, but for those whom he advocates. Eric explained to clinic employee that he is a person with a physical disability who uses a wheelchair, and inquired as to the accessibility of the clinic and services. The employee informed Eric that the clinic did not have staff trained in safe patient lifting to assist him in transferring onto the examination chair, and that they did not have portable or fixed lift equipment available. If Eric had to remain in his wheelchair to be treated, the employee informed him that the examination chair is bolted into the ground and cannot be easily moved.

50.     Eric would use the Dental Group of Rockford when it becomes accessible.

**Nikki Boggess**

51.     Plaintiff Nikki Boggess has been living with the effects of Cerebral Palsy since birth. As a result, she uses a power wheelchair for her mobility. Her power wheelchair does not have a tilt or recline function. Nikki cannot independently transfer onto examination chairs if they are too high. Nikki has never been to a dental clinic or received a dental examination mainly because she has not been able to locate a dental provider whose facilities and services are accessible. In early 2014, Nikki experienced pain with her wisdom teeth and believed she had a couple of cavities.

52.     On February 19, 2014, Nikki called a Heartland affiliated clinic, Baytowne Dental Center, which is located at 907 W. Marketview in Champaign, Illinois, which is approximately 6.3 miles from her apartment. Nikki spoke with an employee and explained that she was in need of a dentist, that she uses a power wheelchair for her mobility, and inquired as to the accessibility of their clinic including assistance in transferring onto their examination chairs. The employee informed her that the examination rooms were small. The employee did not know whether she

could be examined there and said he would inquire and call her back. As of the date of filing this Complaint, Nikki has not received a return phone call from the clinic.

53.    On February 19, 2014, Nikki called another Heartland affiliated clinic, Hessel Park Family Dentistry, which is located at 314 West Kirby Avenue in Champaign, Illinois, which is approximately 3.25 miles from her apartment. Nikki explained to a clinic employee her disability and inquired as to the accessibility of the facility and its services. The employee informed Nikki that there were steps at both entrances and there was no ramp access into the clinic, and therefore, unless she could find a way to overcome those steps, she would not be able get into the clinic to be treated.

54.    On that same day, Nikki called another Heartland affiliated clinic, Family Dental Care of Champaign, which is located at 14 East Anthony Drive in Champaign, Illinois, and is approximately 4.88 miles from her apartment. Nikki explained to the employee who answered the phone about her need for a dentist, the extent of her disability and inquired whether their clinic and dental services were accessible. The employee informed Nikki that she felt that the examination rooms were small and did not know whether Nikki could get into the examination rooms with her wheelchair. The employee stated that she was going to inquire further as to the accessibility of the examination rooms and examination chairs, and would call Nikki back. As of the date of filing this Complaint, Nikki has not received a return phone call from anyone from that clinic.

55.    On February 21, 2014, Nikki called another Heartland affiliated clinic, Dentistry by Design, which is located at 1905 Convenience Place in Champaign, Illinois, approximately 5.02 miles from her apartment. Upon explaining her disability and inquiring as to accessibility of its facility and services, the employee informed Nikki that the examination rooms were small and that she would probably not be able to turn around inside of them. The employee also informed

Nikki that the clinic did not have a transfer board or lift equipment available, and that the staff was not trained in safe patient lifting techniques.

56.     On February 27, 2014, Nikki called yet another Heartland affiliated clinic, the Champaign Dental Group, which is located at 703B S. Neil in Champaign, Illinois, and is approximately 2.51 miles from her apartment. Again, the employee who answered her call told her that the clinic did not have any equipment to help her transfer or to lift her onto the examination chair, and that staff was not trained in safe patient lifting.

57.     Nikki would use any one of the Heartland affiliated clinics that she called to inquire as to their accessibility when they become accessible.

***Grace Morrell***

58.     Plaintiff Grace Morrell has been living with the effects of polio for more than 20 years, and as a result, she utilizes a manual wheelchair. Grace requires assistance in transferring to and from her wheelchair.

59.     On May 15, 2014, Grace called a Heartland affiliated clinic, Coconut Creek Winning Smiles, located at 6532 U.S. Highway 441, Coconut Creek, Florida, 33073, which is approximately 28 miles from her house, to inquire as to the suitability of its facility and dental services for her and her disability. Upon learning of Grace's disability and her use of a wheelchair, the employee informed Grace that the examination rooms were "small," and she was unsure as to whether there was sufficient room for Grace to turn around in her wheelchair once inside. The employee also informed Grace that the clinic's staff was not trained on how to properly lift a patient into the chair and they had no transfer board or lift equipment to facilitate her transfer onto the examination chair.

60.     Grace would use Coconut Creek Winning Smiles when it becomes accessible.

*Juan Garcia*

61.     Since 1989, Plaintiff Juan Garcia has been living with the effects of a spinal cord injury, resulting in quadriplegia. Juan requires the use of a power wheelchair. Juan cannot independently transfer onto examination chairs or examination tables, and requires the assistance of persons who have been properly trained in safe patient handling.

62.     On May 12, 2014, Juan called a Heartland affiliated clinic, Woodmont Family Dentistry, located at 7707 North University Drive in Tamarac, Florida, which is approximately 42 minutes from his place of employment at 2201 NW 102 Place in Doral, Florida. Juan explained to the employee the reason for his call and his need for assistance given his quadriplegia. The employee who answered the phone was very uncertain about the clinic's ability to accommodate Juan and provide him services. The employee said the door was very heavy so Juan would certainly need assistance entering the clinic. The employee also informed Juan that most of the exam rooms were small, but that maybe one examination room is large enough to accommodate his wheelchair, but the employee was not absolutely certain. The employee informed Juan that they would try to assist him in transferring onto the exam chair, but they did not have a transfer board, other lift equipment or any training on how to transfer him in a safe manner.

63.     To assess if other Heartland affiliated clinics in his area are accessible, also on May 12, 2014, Juan called another Heartland affiliated clinic, A Winning Smile dental clinic, which is located at 4623 Forest Hill Blvd in West Palm Beach, Florida, which is about one hour from his place of employment. Juan explained to the employee who answered his call that he was in need of a dentist. He further explained that he uses a power wheelchair for his mobility and was inquiring as to whether the clinic was accessible for someone with his condition. The

employee told Juan that he would likely need assistance to open the main doors to the clinic as they are heavy. The employee also told Juan that he would not be able to turn around inside the examination rooms because of the fixtures in the room. The employee was unsure if Juan could be transferred onto the exam chair as the clinic did not have a transfer board, or portable or fixed lift equipment available.

64.     Juan would use the Woodmont Family Dentistry clinic when it becomes accessible.

*Milita Dolan*

65.     Plaintiff Milita Dolan has been living with the effects of a spinal cord injury resulting in paraplegia. She is unable to stand and walk on her own, and uses a manual wheelchair for her mobility.

66.     On May 19, 2014, in preparation of her relocation to Indian River County, Florida, Milita called a Heartland affiliated clinic, A Winning Smile dental clinic, located at 4623 Forest Hill Blvd., Suite 114, in West Palm Beach, Florida, to inquire about their dental services. When Milita informed the employee of her disability and use of a wheelchair, the employee expressed concern and uncertainty as to whether there was sufficient room inside the exam rooms for Milita to turn around in her wheelchair once inside. When Milita explained to the employee her inability to independently transfer onto the examination chair, the employee informed her that the clinic did not have a transfer or slide board available to transfer her onto the examination chair, and further informed her that the staff is not trained to transfer an individual from their wheelchair into the examination chair.

67.     Also on May 19, 2014 Milita called another Heartland affiliated clinic, Indian River Dentistry, which is located at 2275 20th Street in Vero Beach, Florida. When Milita

inquired as to the accessibility of the facility, the employee advised her that the examination rooms were "small" and that she was unsure if her wheelchair could get in the examination room and whether there was enough room for her to turn around in her wheelchair once inside. When Milita inquired as to her options to transfer onto the examination chair, the employee asked Milita if she has the ability to walk a couple steps, to which Milita responded she was not. After checking with the dentist in the clinic, the employee informed Milita that the clinic did not have a transfer board or lift equipment available to transfer her onto the examination chair, and that the staff was not trained to transfer an individual from their wheelchair into the examination chair. The employee then suggested to Milita that she contact the local hospital to inquire about accessible dental providers in the area.

68.     On or about June 12, 2015, Milita called five other Heartland affiliated clinics, Parkland Family Dentistry, located at 7501 N. State Road 7, in Parkland, Florida, which is approximately 35 miles from her residence; Dental Designs of Plantation, located at 10019 Cleary Blvd., in Plantation, Florida, which is approximately 18.9 miles from her residence; Woodmont Family Dentistry, located at 7707 N. University Drive in Tamarac, Florida, which is 27 miles from her residence; Pompano Beach Family Dental, located at 1239 S. Powerline Road, in Pompano Beach, Florida, which is approximately 36 miles from her residence; and Coconut Creek Winning Smiles, which is located at 6532 N. State Road 7, in Coconut Creek, Florida, which is approximately 34 miles from her residence. At each of those clinics, except Woodmont Family Dentistry, she was informed by an employee at each clinic that they did not have a slide board or other transfer or lift equipment available to facilitate her transfer from her wheelchair onto the examination chair. At Woodmont Family Dentistry, no one could answer her question whether there was lift or transfer equipment available to assist her in transferring onto the examination chair.

69.     Milita would use any of the Heartland affiliated clinics that she called on or about June 12, 2015 to inquire as to their accessibility when they become accessible.

## AMERICANS WITH DISABILITIES ACT
## THE STATUTE AND REGULATIONS

70.     At all times relevant, there was in full force and effect a statute known as the Americans with Disabilities Act, 42 U.S.C. §§ 12101 – 12189, and its implementing regulations, 28 C.F.R. §§ 36.101 – 36.608, which provide in pertinent part as follows:

a.      No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201.

b.      It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b) (1)(A)(i); 28 C.F.R. § 36.202(a).

c.      It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b).

d.      It shall be discriminatory to impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered. 42 U.S.C. § 12182(b) (2)(A)(i); 28 C.F.R. § 36.301(a).

e.      It shall be discriminatory to fail to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to

individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(b) (2)(A)(ii); 28 C.F.R. § 36.302(a).

f.      It shall be discriminatory to fail to remove architectural barriers that are structural in nature in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b) (2)(A)(iv); 28 C.F.R. § 36.304(a).

## <u>DEFENDANT'S VIOLATIONS</u>

71.      Defendant's acts and omissions alleged herein violated and continue to violate the

ADA and its implementing regulations in one or more or all of the following manners:

a.      Heartland has discriminated against the individual Plaintiffs and the class members by denying them the opportunity for the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of its affiliated clinics.

b.      Heartland has discriminated against the individual Plaintiffs and the class members by denying them the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of its affiliated clinics.

c.      Heartland has discriminated against the individual Plaintiffs and the class members by offering or affording them services that are not equal to those services afforded to other individuals without ambulatory impairments at its affiliated clinics.

d.      Heartland has discriminated against the individual Plaintiffs and the class members by imposing or applying eligibility criteria that screen out or tend to screen out disabled individuals with ambulatory impairments who cannot independently transfer from their wheelchairs onto examination chairs where such criteria is not necessary for the provision of dental care services at its affiliated clinics.

e.      Heartland has discriminated against the individual Plaintiffs and the class members by failing to make reasonable modifications in policies, practices, or procedures applicable to its affiliated clinics, which are necessary to afford its goods, services and facilities to Plaintiffs and the class members where such modifications would not fundamentally alter the nature of its goods, services or facilities.

f.      Heartland has discriminated against the individual Plaintiffs and the class members by failing to cause its affiliated clinics to remove architectural barriers that are structural in nature in existing facilities where such removal is readily

achievable.

g. Heartland has otherwise discriminated against the individual Plaintiffs and the class members.

h. All of the foregoing discriminatory conduct equally adversely affects members of associational Plaintiff USA, and its members suffer an immediate and threatening injury as a result of such discriminatory conduct.

72. Defendant's conduct constitutes ongoing and continuing violations of the ADA. Unless restrained from doing so, Heartland will continue to violate the ADA. This conduct, unless enjoined, will continue to inflict injuries on the members of associational Plaintiff USA, the individual Plaintiffs, and the members of the class for which Plaintiffs and the class will have no adequate remedy at law. Therefore, pursuant to Section 308 of the ADA (42 U.S.C. § 12188), Plaintiffs and members of the class are entitled to injunctive relief.

73. The nature of the injunctive relief sought in this action by USA does not make the individual participation of each of its members indispensable to the proper resolution of this action, and such relief, if granted, will inure to the benefit of all USA's members actually injured.

74. Plaintiffs and members of the class are entitled to reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 12205.

75. Plaintiffs demand trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and members of the class pray for the following relief:

a. A preliminary injunction and a permanent injunction, prohibiting Heartland from violating the ADA, 42 U.S.C. § 12181, *et seq.*, and compelling Heartland's affiliated clinics to comply with the ADA;

b. A declaration that Heartland's affiliated clinics are operating in a manner which discriminates against disabled individuals who are ambulatory impaired who depend upon the use of wheelchairs and which fails to provide access for persons with disabilities as required by law;

24

c.   An order certifying the case as a class action pursuant to FED. R. CIV. P. 23(a) and (b)(2), as defined in paragraph 24, and appointing Plaintiffs as class representatives and their attorneys as class counsel;

d.   An award of attorneys' fees and costs; and

e.   Such other relief as the Court deems just.

UNITED SPINAL ASSOCIATION, THADDEUS JESSIE, ERIC BROWN, JEREMIAH BOYER, NIKKI BOGGESS, GRACE MORRELL, JUAN GARCIA, and MILITA DOLAN, individually on behalf of themselves and all other persons similarly situated.

By:      /s/  Jennifer M. Sender         
      One of Their Attorneys

Jennifer M. Sender (ARDC No. 6207774)
Andrés J. Gallegos (ARDC No. 6212168)
Tracy E. Stevenson (ARDC No. 6207780)
Attorneys for Plaintiff
ROBBINS, SALOMON & PATT, LTD.
180 North LaSalle Street, Suite 3300
Chicago, Illinois 60601
(312) 782-9000 - Telephone
(312) 782-6690 - Facsimile
jsender@rsplaw.com
agallegos@rsplaw.com
tstevenson@rsplaw.com